TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00512-CV







John Cornyn, Attorney General of the State of Texas and The Dallas


Morning News, Inc./City of Garland, Texas, Appellants



v.



City of Garland, Texas/John Cornyn, Attorney General of the State of


Texas and The Dallas Morning News, Inc., Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 97-10375, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 The Attorney General of Texas and the Dallas Morning News, Inc., appeal from
a summary judgment recovered by the City of Garland, Texas, in the City's suit against the
attorney general in which the News intervened. We will affirm the judgment.


THE CONTROVERSY


 Kenneth Turner, aged sixteen years, drowned May 23, 1997, in Bradfield
swimming pool operated by the City. The city manager saw a May 26, 1997, television broadcast
of an interview with Tamika Carter, Kenneth's mother. She apparently attributed Kenneth's death
to the negligence of the City and its employees, stating in the broadcast that City employees
"didn't know how to give [Kenneth] correct procedures" after pulling him from the pool, that she
wanted "the pool closed," and that she wanted "to take them for everything they've got." The
television reporter, in closing the interview, stated that "[a] third party is investigating the
drowning."

 Beginning three days after the television broadcast, the News applied to the City
under the provisions of the Texas Public Information Act to obtain copies of the following items: 
(1) a "911" emergency-telephone sound recording related to Kenneth's drowning; (2) an "incident
report" prepared by the City in connection with his death; (3) lifesaving and "CPR" certificates
possessed by lifeguards assigned to four City swimming pools, including the Bradfield pool where
Kenneth died; and (4) a City manual or set of guidelines for lifeguards. See Tex. Gov't Code
Ann. § 552.221 (West Supp. 1999) (Texas Public Information Act, or "TPIA"). The City
declined to provide the copies and, as authorized by TPIA section 552.301(a), solicited the
attorney general's opinion and decision. In its request, the City stated its position that the four
items came within the "litigation exception" of TPIA section 552.103(a)(1). That statute provides
that information need not be disclosed to the public if the information relates "to litigation of a
civil or criminal nature . . . to which the [governmental body] is or may be a party." TPIA
§ 552.103(a)(1) (West 1994) (emphasis added).

 In its submission to the attorney general, the City was required to give written
reasons why the litigation exception justified withholding the items requested by the News. See
TPIA § 552.301(b) (West Supp. 1999). Regarding the "911" sound recording and the incident
report, the City gave as its sole reason the remarks made by Tamika Carter in her television
interview. Regarding the lifeguard materials, the City stated that these items related to pending
litigation that had arisen from similar events at City swimming pools. Based on these reasons, the
City asserted before the attorney general that the City "reasonably anticipated litigation" based on
Kenneth's death.

 The expression "reasonably anticipated litigation" is a term of art derived from the
attorney general's Open Records Decision 638 (1996), construing the litigation exception to
require "concrete evidence that the claim that litigation might ensue is more than mere
conjecture." (1) Tex. Att'y Gen. ORD-638 (1996); see Heard v. Houston Post Co., 684 S.W.2d
210, 212 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 In a series of decisions, the attorney general determined as follows:  (1) the "911"
sound recording and the incident report did not come within the litigation exception because the
City's only stated reason--Tamika Carter's remarks in her television interview--was insufficient
to justify a reasonable anticipation of litigation; however, (2) the existence of pending litigation,
to which the lifeguard materials related, brought these materials within the litigation exception.

 The City sued the attorney general in district court for a declaratory judgment that
the City's anticipation of litigation, as to the "911" sound recording and incident report, was in
fact reasonable. The attorney general appeared and answered in the cause to defend his decision. 
The News intervened, requesting declaratory relief, a permanent injunction, and a writ of
mandamus to obtain the lifeguard materials and, in an apparently unrelated claim, to prevent future
violations of the Texas Open Meetings Act by the city council of the City of Garland. See Tex.
Gov't Code Ann. § 551.142 (West 1994) (Texas Open Meetings Act, or "TOMA").

 While the lawsuit was pending in district court, and fifteen days after the News
intervened, the City received from Tamika Carter and Hattie Lee Carter formal claims alleging
that Kenneth's death was caused by the City's negligence. Asserting that each of them was
entitled to resulting damages in excess of $500,000, the Carters claimed to be representatives of
Kenneth's estate and listed the name of their attorney on the claim form.

 The City moved for summary judgment on its action for declaratory judgment that
the litigation exception authorized withholding all the items requested by the News. In its motion,
the City augmented its reasons for anticipating litigation by adding to Tamika Carter's television
remarks the contents of several affidavits. These included the affidavit of the city secretary,
verifying receipt of the claim forms filed by Tamika Carter and Hattie Lee Carter, and the
affidavit of the city manager, stating that before the television broadcast of May 26, 1997, Tamika
Carter told him not to telephone her again and to deal "only with her attorney in the future."

 The attorney general moved for summary judgment sustaining his decision
regarding the "911" sound recording and the incident report. The News moved for summary
judgment on its claims under TPIA and TOMA, asserting it was entitled as a matter of law to the
"911" sound recording, the incident report, the lifeguard materials, and a list of pending lawsuits
involving the City. (The City has since made available and the News has obtained the list of
lawsuits and it is no longer in controversy.)

 In deciding the three motions for summary judgment, the district court ordered as
follows:  (1) TPIA did not require the City to disclose the "911" sound recording, the incident
report, or the lifeguard materials; (2) the News' claim under TOMA was moot and its related
claims for relief were denied; (3) each party's claim for attorney's fees was denied; and (4) the
three motions for summary judgment were denied in all other respects.

 The attorney general and the News appealed; the City appealed from the summary-judgment order insofar as it denied the City's claim for attorney's fees, a matter discussed below.


THE LITIGATION EXCEPTION


 The News and the attorney general assign as error the district court's decision that
the litigation exception justified the City's refusal to disclose the "911" sound recording and the
incident report. They contend, as they did in their motions for summary judgment, that under a
proper interpretation of TPIA the issue of whether the City reasonably anticipated litigation from
the death of Kenneth Turner must be determined exclusively by the reason the City furnished the
attorney general in soliciting his decision--the televised remarks of Tamika Carter. And these
remarks, the News and the attorney general contend, fell short of the concrete evidence required
to justify a reasonable anticipation of litigation.

 The News and the attorney general do not dispute that when Tamika Carter and
Hattie Lee Carter filed with the City their formal notices of claim, this amounted to sufficiently
concrete evidence. The News and the attorney general contend, however, that the City's
summary-judgment proof of those claims was beyond the power of the district court to consider
because the filing of the claims was not among the reasons given the attorney general when the
City requested his decision and opinion.

 We believe the position taken by the News and the attorney general is necessarily
foreclosed by our decision in City of San Antonio v. Texas Attorney General, 851 S.W.2d 946,
950 (Tex. App.--Austin 1993, writ denied). In City of San Antonio, the attorney general
contended the governmental body "waived" a particular reason for nondisclosure because the
governmental body "did not urge that contention when it requested an opinion of the attorney
general." City of San Antonio, 851 S.W.2d at 950. We pointed out that a governmental body's
request for the attorney general's opinion and decision under TPIA "does not give rise to a species
of litigation culminating in a decision by that officer that binds parties in their legal and equitable
interests. . . . The attorney general's opinions, like the other opinions given by that officer, are
purely ministerial and advisory, although the procedures for requesting such opinions are designed
to enable the attorney general to perform his or her duty--to arrive at and furnish governmental
bodies with the soundest possible advisory opinions." Id. We should explain further.

 It is by force of TPIA itself, and not by any force inherent in the attorney general's
decision, that requested information "is presumed to be public information" if the governmental
body does not request the attorney general's decision and opinion in a particular case. See TPIA
§ 552.302 (West 1994). In the present case, the City avoided the statutory presumption by
requesting the attorney general's decision and opinion. While the attorney general rejected the
City's position in the dispute, regarding the "911" sound recording and incident report, nothing
in TPIA or elsewhere made that officer's decision binding on anyone and nothing required the City
to submit to it. The attorney general's decision was purely advisory. It was not based on any
evidentiary hearing. It was not in any sense an actual adjudication as to any issue of fact or law
relating to whether the City reasonably anticipated litigation from Kenneth's death or the
applicability of the litigation exception.

 Nor was the City required to await a mandamus action or a criminal prosecution
under TPIA section 552.353 and defend at that time based on its contention that its anticipation
of litigation was in fact reasonable in the circumstances then or therefore existing. TPIA explicitly
acknowledges a governmental body's right to sue for declaratory judgment challenging and
seeking relief from the attorney general's decision. See TPIA §§ 552.324, .325 (West Supp.
1999). The City filed in the present cause a suit of that character. 

 While recognizing a governmental's body's right to sue the attorney general for
declaratory judgment, nothing in TPIA purports to limit the court's jurisdiction in such cases. 
Nothing in TPIA purports to prescribe a manner of proceeding in such cases, save for provisions
designed to protect the interests of the person who requested the information from the
governmental body. See TPIA § 552.325 (West Supp. 1999). Nothing in TPIA purports to limit
or prescribe the evidence the court may receive, the issues of fact or law that may be decided, or
the kind of declaratory relief that may be granted by the court and on what grounds. This is in
stark contrast to the judicial-review provisions of the Texas Administrative Procedure Act, for
example, that governs the substantial-evidence review of the contested-case decisions of most
administrative agencies. In those suits, the court's review is limited to questions of law; these are
determined based solely on the record of proceedings compiled in and by the agency and the
evidence contained in such record; the reviewing court is expressly prohibited to weigh that
evidence and expressly prohibited to receive additional evidence save in extraordinary
circumstances; and the court may reverse the agency decision and remand the case to the agency
for further proceedings only if an error of law by the agency has prejudiced the substantial rights
of the person bringing the suit. See Tex. Gov't Code Ann. §§ 2001.174, .175(e) (West 1998).

 The legislature has not dictated any similar provisions to govern suits for
declaratory relief brought by a governmental body under TPIA. This implies in the strongest
terms that the legislature intended that such actions be determined within the district court's
general original jurisdiction and according to the procedure followed in an ordinary suit brought
under the Uniform Declaratory Judgments Act. See Tex. Const. art. V, § 8; Tex. Gov't Code
Ann. § 24.007 (West 1998); Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997); see,
e.g., Houston Indep. Sch. Dist. v. Houston Chronicle, 798 S.W.2d 580, 583 (Tex. App.--Houston
[1st Dist.] 1990, writ denied). In other words, declaratory-judgment actions brought by a
governmental body under TPIA are brought, heard, and determined in the same manner as civil
actions generally, based on the statutes or other instruments involved, the issues of fact and law
that arise in the suit, and the evidence received in court. Actions of this kind may result in the
first adjudication of such controversies because any preceding decision of the attorney general, if
one was obtained, is not an adjudication at all. It necessarily follows that the district court did not
err in basing its decision on the summary-judgment proof filed in that court, including the
undisputed fact that Tamika Carter and Hattie Lee Carter filed their notices of claim with the City
after the litigation commenced.

 We hold, therefore, that the district court did not err in its judgment respecting the
"911" sound recording and the incident report requested by the News.

 The News assigns as error that part of the summary-judgment order declaring that
the City need not disclose its lifeguard materials. The News argues that the materials do not come
within the litigation exception or any other exception because TPIA provides as follows:  "Without
limiting the amount or kind of information that is public information under this chapter, the
following categories of information are public information: . . . (14) administrative staff manuals
and instructions to staff that affect a member of the public." TPIA § 552.022(14) (West Supp.
1999) (emphasis added). The News contends this provision categorically forecloses any possibility
that any exception can apply to items of information coming within TPIA section 552.022(14). 

 We reject the News' argument that the kinds of information described in TPIA
section 552.022 are never subject to an exception because they are therein declared categorically
to be "public information." We do not believe this was the legislature's intention. The eighteen
categories of information described in section 522.022 are not all alike. For example, it would
be difficult to imagine a case where an exception could be applicable to the information described
in subsections 522.022(6)-(9). On the other hand, we do not believe the legislature intended that
the exception made for "information relating to . . . the location of real property" and "appraisals
or purchase price" of such property should be inapplicable in the period "prior to public
announcement of the project" or the award of a contract for the property, even though the
governmental body possessed "a completed report, . . . evaluation, or investigation" regarding
such matters. TPIA § 552.022(1) (West Supp. 1999); see TPIA § 552.105 (West 1994). 
Concerning information described in TPIA section 522.022(14), we can imagine no reason why
the legislature could have intended that the lifeguard materials should not come within the
litigation exception. By its literal language and its very nature as an exception, the litigation
exception of TPIA section 552.103(a) assumes the disputed information is public information, as
TPIA section 522.022(14) declares, yet the legislature provided that very exception.

 Finally, the News contends that genuine issues of material fact precluded summary
judgment as to the applicability of the litigation exception to the lifeguard materials.

 At the time the News requested the lifeguard materials, the City was involved in
pending litigation arising from drowning incidents at other city-owned swimming pools. In
opposition to the City's motion for summary judgment in the present case, the News filed the
affidavit of its reporter. On appeal, the News contends the contents of the reporter's affidavit and
the affidavit of Michael J. Betz, the City's lawyer in the other, pending litigation, were in conflict
regarding certain issues of material fact. Consequently, the trial court erred in rendering summary
judgment that the City need not discuss the lifeguard materials.

 The News reporter swore that Betz told the reporter that the lifeguard materials had
been furnished the plaintiffs in the pending litigation in the course of "discovery." If so, the City
lost its right to rely upon the litigation exception because TPIA provides as follows: a government
body may voluntarily make "part or all of its information available to the public, unless the
disclosure is expressly prohibited by law or the information is confidential under law"; and public
information thus made available voluntarily "must be made available to any person." TPIA
§ 552.007(a), (b) (West Supp. 1999) (emphasis added).

 While Betz denies making the statement attributed to him by the reporter, we will
assume the truth of the reporter's affidavit.

 The provisions of TPIA section 552.007(a) and (b) were raised by the News as an
affirmative defense to the City's declaratory-judgment action and its motion for summary
judgment. The News therefore bore the burden of showing a disputed fact issue as to each element
of the defense. See 3 Texas Civil Practice § 18.7, at 464-65 (Diane M. Allen et al. eds., 1992
ed.).

 The reporter's affidavit fails in this respect regarding two elements. The first
pertains to the voluntariness of the City's action in allegedly disclosing the lifeguard materials in
the other, pending litigation. That the documents were provided pursuant to "discovery" in that
litigation, as the reporter stated, implied in fact that they were provided because the rules of
"discovery" required disclosure. More to the point, nothing in the reporter's affidavit or
elsewhere in the record suggests that the documents were provided voluntarily as TPIA section
552.007(a) requires. Second, the City's act in allegedly disclosing the lifeguard materials in the
other, pending litigation does not, as a matter of law, foreclose the City's reliance upon the
litigation exception in prospective litigation wherein the lifeguard materials may become relevant. 
The primary purpose of the litigation exception is to enable governmental bodies to protect their
position in litigation by requiring parties seeking relevant information to obtain it, if at all, through
"discovery" processes; and that purpose may survive a previous disclosure to be applicable in
prospective litigation involving the same information. See Tex. Att'y Gen. ORD-454 (1986)
(governmental body may retain legitimate reasons for insisting that prospective plaintiff obtain
information through "discovery," notwithstanding governmental body's previous disclosure of
information to prospective co-defendant). Nothing in the reporter's affidavit or elsewhere in the
summary-judgment record suggests any basis for concluding that the City exhausted its interest
in the litigation exception by its disclosure of the lifeguard materials in the other, pending
litigation.

 In his affidavit, the reporter also swore that Betz seated the reporter in a room in
Betz's offices and allowed the reporter "to review and obtain copies of any of the documents in
the room." Copies of the documents thus obtained by the News reporter were attached to his
affidavit filed in opposition to the City's motion for summary judgment. In Betz's affidavit, he
denies that the documents thus furnished the reporter are the same documents requested by the
News--documents we have referred to as the "lifeguard materials." We will assume again the
truth of the reporter's affidavit and turn to the News' contentions on appeal that this disclosure of
the lifeguard materials, to the News reporter, precluded the City's reliance upon the litigation
exception; and, that the conflicting affidavits raised genuine issues of material fact precluding
summary judgment.

 If the documents requested by the News are the same as those attached to the
reporter's affidavit, then any issue would appear to be moot with respect to those documents. If
however, the reporter's affidavit is understood as verifying the existence of other lifeguard
materials not supplied pursuant to the City's request, we believe summary judgment was not
precluded by reason of a genuine issue of material fact. The waiver resulting from a governmental
body's disclosure of documents extends "only to the documents released, and not with respect to
other, related documents." 37A Am. Jur. 2d Freedom of Information Acts § 77, at 117 (1994). 
We concur with the reasoning that a contrary rule would inhibit the purpose of TPIA, which is to
encourage the free release of information. Under such a contrary rule, governmental bodies would
tend to refuse to make disclosures of information other than those explicitly required by law,
avoiding thereby the risk of compelled disclosure of related documents in litigation. They "would
have an incentive to refuse to release all exempt documents if [they] wished to retain an exemption
for any documents." Mobil Oil Corp. v. United States Envtl. Protection Agency, 879 F.2d 698,
701 (9th Cir. 1989).

 We hold the trial court did not err in its summary judgment with respect to the
litigation exception.


TEXAS OPEN-MEETINGS ACT VIOLATIONS


 In its original pleading in intervention, the News alleged that the notices posted by
the City in advance of closed meetings of the city council described insufficiently the subjects to
be discussed in those meetings. See TOMA § 551.041 (West 1994); Cox Enters., Inc. v. Board
of Trustees, 706 S.W.2d 956, 959-60 (Tex. 1986). The News prayed for a declaratory judgment
that the notices posted by the City for past meetings of the city council violated TOMA and for
a permanent injunction and writ of mandamus requiring that the City "fully comply with [TOMA]
with regard to notice of meetings in the future." See TOMA § 551.142(a) (West 1994); Tex. Civ.
Prac. & Rem. Code Ann. § 37.004(a) (West 1997). The News complains on appeal that the
district court sustained in that respect the City's motion for summary judgment. We believe the
district court did not err.

 Among the City's responses to the News' motion for summary judgment, the City
pleaded that the News' claims were moot insofar as they related to the notices posted previously
for past city council meetings and required an advisory opinion, beyond the power of a court to
give, insofar as they related to notices of future closed meetings.

 Concerning the apparent mootness of the News' claim relating to notices of past
meetings, the News argues the doctrinal exception made for acts that are "capable of repetition
yet evading review." We believe the exception is inapplicable. TOMA itself provides that any
"interested person, including a member of the news media," has the right of immediate judicial
review by way of an application for writ of "mandamus or injunction to stop, prevent, or reverse
a violation or threatened violation" of the notice requirement. TOMA § 551.142(a) (West 1994)
(emphasis added). If a violation evades review, the reason does not lie in the inherent nature of
the allegedly wrongful act. It lies rather in the failure of the "interested person" to invoke the
immediate remedy expressly provided by the legislature. See Spring Branch I.S.D. v. Reynolds,
764 S.W.2d 16, 18 (Tex. App.--Houston [1st Dist.] 1988, no writ). It is not contended that the
statutory remedy is inadequate for the purpose.

 As to notices required to be posted in connection with future closed meetings of the
city council, we believe the News' claim requires an advisory opinion. The legal sufficiency of
any such notice will depend on its particular content. Because such a notice has not yet been
composed or posted, its content can only be a matter of speculation and conjecture. For that
reason the News' claim requires an advisory opinion that lies outside the judicial power. See
Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993); Coalson v. City
Council of Victoria, 610 S.W.2d 744, 747 (Tex. 1980).

 We overrule the News' assignment of error regarding its TOMA claim.


ATTORNEY'S FEES


 The City and the News appeal from the decision of the district court denying their
claims for attorney's fees. On submission of the appeal, the City waived in open court its claim
for such fees and we need not consider the City's appeal on that issue.

 The News contends, apparently, that the district court abused its discretion because
it denied the News' claim for attorney's fees even though "the trial court correctly found
'overwhelming evidence' that it was only by the 'diligent effort' of the News that Garland
transformed its meeting practices to comply with state law [TOMA]." Having thus "prevailed"
in its position under TOMA, the News argues, it was entitled to its attorney's fees under TOMA
section 551.142(b) and section 37.009 of the Uniform Declaratory Judgments Act. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (West 1997); TOMA § 551.142(b) (West 1994).

 We overrule the assignment of error. The trial-court "finding" to which the City
refers is not a finding in the ordinary sense; it is a statement in the trial judge's letter to counsel. 
Because the News did not succeed on any material aspect of the litigation made by the pleadings,
we hold the trial court did not abuse its discretion in declining to award the News its attorney's
fees.

 We affirm the district court judgment.



 

 John E. Powers, Justice

Before Justices Kidd, Patterson and Powers*

Affirmed

Filed: May 20, 1999

Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The word "evidence" is not employed here in its technical sense. The attorney general
conducts no evidentiary hearing in its decisionmaking under TPIA section 552.306.



ess of the News' claim relating to notices of past
meetings, the News argues the doctrinal exception made for acts that are "capable of repetition
yet evading review." We believe the exception is inapplicable. TOMA itself provides that any
"interested person, including a member of the news media," has the right of immediate judicial
review by way of an application for writ of "mandamus or injunction to stop, prevent, or reverse
a violation or threatened violation" of the notice requirement. TOMA § 551.142(a) (West 1994)
(emphasis added). If a violation evades review, the reason does not lie in the inherent nature of
the allegedly wrongful act. It lies rather in the failure of the "interested person" to invoke the
immediate remedy expressly provided by the legislature. See Spring Branch I.S.D. v. Reynolds,
764 S.W.2d 16, 18 (Tex. App.--Houston [1st Dist.] 1988, no writ). It is not contended that the
statutory remedy is inadequate for the purpose.

 As to notices required to be posted in connection with future closed meetings of the
city council, we believe the News' claim requires an advisory opinion. The legal sufficiency of
any such notice will depend on its particular content. Because such a notice has not yet been
composed or posted, its content can only be a matter of speculation and conjecture. For that
reason the News' claim requires an advisory opinion that lies outside the judicial power. See
Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 44